# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIA LEE, | ) 1:06-cv-00301-SMS |
| Plaintiff, | ) DECISION AND ORDER DENYING |
| v. | ) PLAINTIFF'S SOCIAL SECURITY |
| | ) COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) ORDER DIRECTING THE ENTRY OF |
| Security, | ) JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) SECURITY, AND AGAINST PLAINTIFF |
| | ) TIA LEE |
| | ) |

Plaintiff is proceeding in forma pauperis and with counsel against the Commissioner[1] of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[2]

---

[1] Michael J. Astrue is substituted for his predecessor as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] The Honorable Oliver W. Wanger ordered the case assigned to the undersigned Magistrate Judge on August 1, 2006.

The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On October 10, 2002, Plaintiff protectively filed an application for Supplemental Security Income (SSI), alleging disability since October 1, 2002, because of high blood pressure, arthritis, pain in the back and shoulder, and a mental condition associated with depression, anxiety, insomnia, delusions, hallucinations, suicidal ideation, and difficulty working with others. Although Plaintiff had previously filed an application for SSI regarding a disability allegedly beginning on March 19, 2001, it was denied after hearing by decision dated September 6, 2002. However, the administrative law judge (ALJ) in the instant proceeding did not apply a continuing presumption of disability from this previous, unfavorable decision. (A.R. 16-23, 56-61, 87, 107, 114.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable Patricia Leary Flierl, ALJ of the Social Security Administration (SSA), on April 27, 2005. (71-74, 77-80, 16, 23.) Plaintiff appeared with an attorney and testified with the assistance of a Hmong interpreter. On May 23, 2005, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 16-23.) Plaintiff appealed the ALJ's decision to the Appeals Council.

After the Appeals Council denied Plaintiff's request for review on February 16, 2006, Plaintiff filed the complaint in this action on March 16, 2006. (<u>Id.</u> at 4-7.) Briefing commenced in December 2006, with Defendant's brief being filed on January

2

1  24, 2007, and Plaintiff's reply on January 30, 2007.

2      II. <u>Standard and Scope of Review</u>

3      Congress has provided a limited scope of judicial review of

4  the Commissioner's decision to deny benefits under the Act. In

5  reviewing findings of fact with respect to such determinations,

6  the Court must determine whether the decision of the Commissioner

7  is supported by substantial evidence. 42 U.S.C. § 405(g).

8  Substantial evidence means "more than a mere scintilla,"

9  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

10 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

11 (9th Cir. 1975). It is "such relevant evidence as a reasonable

12 mind might accept as adequate to support a conclusion."

13 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

14 as a whole, weighing both the evidence that supports and the

15 evidence that detracts from the Commissioner's conclusion; it may

16 not simply isolate a portion of evidence that supports the

17 decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.

18 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  It

19 is immaterial that the evidence would support a finding contrary

20 to that reached by the Commissioner; the determination of the

21 Commissioner as to a factual matter will stand if supported by

22 substantial evidence because it is the Commissioner's job, and

23 not the Court's, to resolve conflicts in the evidence. <u>Sorenson</u>

24 <u>v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

25     In weighing the evidence and making findings, the

26 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>

27 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

28 review the whole record and uphold the Commissioner's

1  determination that the claimant is not disabled if the
2  Commissioner applied the proper legal standards, and if the
3  Commissioner's findings are supported by substantial evidence.
4  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
5  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
6  the Court concludes that the ALJ did not use the proper legal
7  standard, the matter will be remanded to permit application of
8  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th
9  Cir. 1987).

10       III. Disability

11       In order to qualify for benefits, a claimant must establish
12  that she is unable to engage in substantial gainful activity due
13  to a medically determinable physical or mental impairment which
14  has lasted or can be expected to last for a continuous period of
15  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
16  claimant must demonstrate a physical or mental impairment of such
17  severity that the claimant is not only unable to do the
18  claimant's previous work, but cannot, considering age, education,
19  and work experience, engage in any other kind of substantial
20  gainful work which exists in the national economy. 42 U.S.C.
21  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
22  Cir. 1989). The burden of establishing a disability is initially
23  on the claimant, who must prove that the claimant is unable to
24  return to his or her former type of work; the burden then shifts
25  to the Commissioner to identify other jobs that the claimant is
26  capable of performing considering the claimant's residual
27  functional capacity, as well as her age, education and last
28  fifteen years of work experience. Terry v. Sullivan, 903 F.2d

4

1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[3]

Here, the ALJ concluded that Plaintiff, a forty-five-year-old woman who lacked a formal education, was illiterate and unable to communicate in English, and who had no relevant past work history in this country, suffered from severe depressive disorder, not otherwise specified, arthritis, and post-traumatic stress disorder that did not meet or medically equal a listed impairment; Plaintiff retained the residual functional capacity to perform light exertion and simple, one-step and two-step tasks

---

[3] All references to the Code of Federal Regulations are to the 2005 version unless otherwise stated.

1 with moderate difficulties in maintaining concentration,
2 persistence and pace, and mild limitations in her activities of
3 daily living and social functioning associated with her
4 depressive disorder and post traumatic stress disorder (A.R. 16-
5 17, 21.) The ALJ concluded that Plaintiff could perform almost
6 all of the requirements of light work, and using the Medical-
7 Vocational Guidelines (the Grids) as a framework for decision,
8 the ALJ further concluded that Plaintiff was capable of
9 performing numerous unskilled jobs that existed in significant
10 numbers in the national economy. (A.R. 21-22.)

11      IV.  <u>Plaintiff's Residual Functional Capacity</u>

12      Plaintiff argues that the ALJ's finding regarding
13 Plaintiff's residual functional capacity (RFC) was not supported
14 by a statement of adequate reasons or by substantial evidence
15 because the ALJ failed to give the appropriate weight to the
16 opinion of treating source Dr. Kaleka and to consultative
17 examiner Dr. Forward, who opined that Plaintiff suffered greater
18 limitations from her mental impairment than did the experts
19 relied upon by the ALJ.

20      The pertinent law has been recently summarized:

21           The opinions of treating doctors should be given
      more weight than the opinions of doctors who do not
22      treat the claimant. <u>Lester [v. Chater</u>, 81 F.3d 821, 830
      (9th Cir.1995) (as amended).] Where the treating
23      doctor's opinion is not contradicted by another doctor,
      it may be rejected only for "clear and convincing"
24      reasons supported by substantial evidence in the
      record. <u>Id.</u> (internal quotation marks omitted). Even if
25      the treating doctor's opinion is contradicted by
      another doctor, the ALJ may not reject this opinion
26      without providing "specific and legitimate reasons"
      supported by substantial evidence in the record. <u>Id.</u> at
27      830, quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th
      Cir.1983). This can be done by setting out a detailed
28      and thorough summary of the facts and conflicting

6

1    clinical evidence, stating his interpretation thereof,
2    and making findings. <u>Magallanes [v. Bowen</u>, 881 F.2d 747,
     751 (9th Cir.1989).] The ALJ must do more than offer his
3    conclusions. He must set forth his own interpretations and
     explain why they, rather than the doctors', are correct.
4    <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir.1988).
     <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998);
5    accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at
     830-31.

6    <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

7              A. <u>Dr. Kaleka</u>

8          Plaintiff testified with some equivocation that no one had

9    ever told her to see, and that she had not seen, any

10   psychiatrist, counselor, or therapist. (A.R. 296.) She reported

11   to Dr. Ramon Q. Raypon, a psychiatrist, in April 2003 that she

12   had no psychiatric hospitalization or treatment other than drugs

13   prescribed by her primary care physician, Dr. Kaleka. (A.R. 159.)

14        The Court considers the ALJ's decision in its entirety.

15        The ALJ noted the opinion of Dr. Raypon after his

16   consultative examination of Plaintiff in April 2003 in which he

17   diagnosed Plaintiff with depressive disorder, not otherwise

18   specified. Dr. Raypon concluded that Plaintiff had no apparent

19   significant difficulties in maintaining appropriate social

20   functioning; had the capacity to maintain concentration and

21   attention to an activity for a short period; could understand,

22   remember, and carry out simple verbal directions; was capable of

23   handling funds; and would likely be impaired in her ability to

24   engage in and sustain work activities but would benefit from

25   continuing current psychotropic medications. (A.R. 17-18, 159-

26   61.)

27        The ALJ further noted the opinion of state agency medical

28   consultant Glenn Ikawa, M.D., of July 2003 that Plaintiff could

sustain simple, repetitive tasks for eight hours (A.R. 164) and of psychiatrist Archimedes Garcia in January 2004 affirming Dr. Ikawa's assessment (A.R. 18, 164).

The ALJ noted Plaintiff's treatment by Dr. Kaleka for depression and physical ailments as well as Dr. Kaleka's assessment of April 2002 that suggested mental limitations (not recited by the ALJ) and stated that Plaintiff had fair ability to perform simple tasks. (A.R. 18, 216-19.) With respect to Dr. Kaleka's medical source statement dated July 2002, the ALJ noted the contrast between the assessment and contemporaneous, routine treatment notes. Dr. Kaleka reported that Plaintiff's ability to relate and interact with others and withstand the stress of work was poor; her ability to understand, remember, and carry out simple instructions, deal with the public, and maintain concentration for two-hour increments was impaired and was expected to last about one year. (A.R. 18, 211-12, 229-30.)

The ALJ further noted a physician's assistant's welfare assessment dated July 29, 2002, that Plaintiff's several medications for depression might cause drowsiness and sleepiness. (A.R. 18, 209, 207-10.)

The ALJ further referred to records that reflected that Dr. Kaleka continued to treat Plaintiff conservatively for depression and anxiety in October 2003. (A.R. 18, 269.) The ALJ referred to a physician's assistant's mental capacities form dated January 2004 that indicated that Plaintiff could not work or follow instructions, and which reflected other limitations that the ALJ did not mention. (A.R. 18, 266.) The ALJ reasoned that the statement was not supported by treatment records and thus was not

given controlling weight. (A.R. 18.) The ALJ also noted that the most recent progress notes from Dr. Kaleka reflected continued conservative treatment in the form of medications for depression, anxiety, and Plaintiff's physical ailments. (A.R. 19, 280-82.)

The ALJ reviewed consulting psychiatric examiner Dr. E. Michiel's findings and opinions after his examination of Plaintiff in November 2003, and he specifically noted that Dr. Michiel had opined that Plaintiff could maintain attention and concentration to carry out simple one-step or two-step job instructions. (A.R. 18, 249-51.) After reviewing Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's alleged inability to work was not credible to the degree alleged. (A.R. 19-20, 22.)

The ALJ then stated reasons pertinent to Dr. Kaleka's opinions, including 1) Plaintiff had only received treatment in the form of medication from her treating source; 2) Dr. Kaleka's assessment of April 2002 appeared to be an attempt to help Plaintiff obtain benefits because the limitations reported appeared out of proportion to actual clinical findings; 3) Dr. Kaleka's report of April 2002 that Plaintiff had significant loss of memory resulting in a fair ability to understand, remember, and carry out simple instructions was contradicted by the findings during the later evaluation of November 2003 (A.R. 250), during which Plaintiff could recall three out of five objects after five minutes and could make correct change from $1.00; 4) Plaintiff's treating source did not refer her to mental health for counseling or group therapy, and she had not sought further treatment for her mental complaints; and 5) while Dr. Raypon, the

first consulting psychiatrist, opined that continuing symptoms of depression would likely impair Plaintiff's ability to engage in and sustain work activities. Dr. Michiel, the consulting psychiatrist who had most recently examined Plaintiff, had found her capable of maintaining attention and concentration sufficient to perform one-step and two-step simple job instructions based on her presentation and reported activities of daily living, which was most consistent with the overall evidence. (A.R. 20.)

Here, the ALJ reviewed the entire medical record and determined that Dr. Kaleka's opinion was not supported by it. The ALJ also expressly stated several reasons pertinent to his giving limited weight to the opinion of Dr. Kaleka. The ALJ reviewed the overall, longitudinal record of treatment with respect to Plaintiff's medical condition. He stated that Dr. Kaleka's treatment notes were routine in nature, in contrast to his assessments of April and July 2002, which were relatively restricted. (A.R. 18.) The record supports this finding because it reveals that in April 2002, based on Plaintiff's reports and/or clinical findings of insomnia, depression, anxiety, guilt feelings, mood changes, fear and nightmares, and easily lost temper, Dr. Kaleka diagnosed depression with psychotic features and anxiety treated with limited response by medications (Seroquel, Restril, and Buspar) with a fair to guarded prognosis; Plaintiff had poor ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention and concentration, understand, remember and carry out detailed or complex job instructions, behave in an

emotionally stable manner, relate predictably in social
situations, and demonstrate reliability, but fair ability to
understand, remember and carry out simple instructions and to
maintain personal appearance; she had limited ability to
concentrate to do anything because of loss of memory, and she
lost her temper easily and could not withstand the stress and
pressures; and she could not manage her benefits in her own best
interest. (A.R. 216-19.)

Again, the two-page assessment of July 1, 2002, of Dr.
Kaleka indicated that Plaintiff had poor ability to relate and
interact with supervisors and coworkers, very poor ability to
understand, remember and carry out an extensive variety of
technical and/or complex job instructions, impaired ability to
understand, remember and carry out simple one-step or two-step
job instructions, deal with the public, or maintain concentration
and attention for at least two-hour increments; Plaintiff had
poor ability to withstand the stress and pressures associated
with an eight-hour work day and day-to-day work activity;
impaired and limited ability to handle funds; limited response to
treatment; her medications might cause drowsiness or headaches;
the prognosis was fair to guarded for one year; and the medical
provider expressly stated that Plaintiff needed to be evaluated.
(A.R. 211-12, 229-30.)

No treatment notes or clinical findings accompanied this
evaluation. However, reference to the treatment notes of Dr.
Kaleka over the long period of approximately monthly treatment
from February 2001 through March 2005 reveals that they are
routine to the point of being nearly identical. (A.R. 213, 239-

42, 235-37, 223-28, 221, 215, 213, 210, 206, 200, 198, 193-98, 186-89, 183-84, 267-69, 261-64, 256-57, 280-82.) Plaintiff routinely reported substantially subjective symptoms, including insomnia, depression, anxiety, crying, guilt feelings, mood changes, fearfulness, nightmares; sometimes loss of memory, anger, loss of sleep, and lost temper were also noted. Dr. Kaleka diagnosed depression and anxiety at first, then depression with psychotic features, and then depression with anxiety; Dr. Kaleka treated Plaintiff with medications beginning in early 2001 and continuing through 2005. (A.R. 213, 280-81.)

The record supports the ALJ's conclusion that the treatment notes are routine and the treatment conservative in the face of an assessment of total disability. It is established that a conclusional opinion that is unsubstantiated by relevant medical documentation and/or not supported by clinical findings may be given less weight. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751; Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). It is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Greater weight will be given to opinions based on or supported by relevant evidence, such as medical signs and laboratory findings. 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3). Likewise, the better an explanation a source provides for an opinion, the more weight will be given to the

opinion. Id. The more consistent an opinion is with the record as a whole, the more weight will be given to the opinion. 20 C.F.R. § 404.1527(d)(4); 20 C.F.R. § 416.927(d)(4). Further, it is established that even where an expert's report identifies characteristics that might limit a claimant's ability to perform work on a sustained basis, if the report fails to explain how such characteristics preclude work activity in the claimant's case, it is appropriate and adequate for an ALJ to 1) determine that the level of impairment stated is unreasonable in light of the symptoms and other evidence in the record, and 2) set forth that analysis. See Morgan v. Commissioner of Social Security 169 F.3d 595, 601 (9th Cir. 1999).

The ALJ here stated his reasons and relied on the lack of treatment notes that substantiated the nature and extent of the limitations claimed by Plaintiff and her treating physician. The evidence relied upon was such as a reasonable mind might accept as adequate to support the conclusions. Substantial evidence supported the ALJ's conclusion.

Because the actual clinical findings made by Dr. Kaleka were out of proportion to the severe limitations imposed by Dr. Kaleka, the ALJ could properly conclude that Dr. Kaleka's assessment of April 2002 appeared to be an attempt to help Plaintiff obtain benefits. The purpose for which an opinion is provided is not a legitimate basis for evaluating the reliability of the report; however, evidence of the circumstances under which a report was obtained and its consistency with other records, reports, or findings could form a legitimate basis for evaluating the reliability of the report. The correct standard with respect

13

to an opinion's purpose is that in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. <u>Reddick v. Chater</u>, 157 F.3d 715, 726 (9th Cir. 1998).

Here, the ALJ referred to legitimate and specific reasons other than the purpose of the report that tended to undermine Dr. Kaleka's opinion. After concluding that the ALJ's April 2002 assessment (significant memory loss resulting in only a fair ability to understand, remember, and carry out simple instructions) appeared to be an attempt to help Plaintiff obtain benefits because of the disparity between actual clinical findings and the limitations imposed, the ALJ then further noted that the opinion was contradicted by findings during Dr. Michiel's exam in November 2003, when Dr. Michiel found that Plaintiff could recall three objects after five minutes and could make correct change from $1.00. (A.R. 250.) The ALJ's reliance on more up-to-date and specific findings by the consulting examiner was legitimate and specific and was supported by substantial evidence.

The ALJ then addressed another limiting opinion, that of Dr. Raypon, and expressly relied instead on the later opinion of Dr. Michiel, who found that Plaintiff could maintain attention and concentration sufficient to perform one-step and two-step simple job instructions. The ALJ stated several reasons for adopting the opinion of Dr. Michiel, including 1) the opinion of Dr. Michiel was more recent; 2) the opinion was consistent with Plaintiff's presentation and her reported activities of daily living; and 3)

1  it was the opinion most consistent with the overall evidence.
2  (A.R. 20.)

3  　　As previously discussed, the ALJ's characterization of the
4  medical record was supported by substantial evidence; both
5  examining specialists Dr. Raypon and Dr. Michiel found that
6  Plaintiff could remember and perform simple instructions. Dr.
7  Michiel's report was more recent. The opinion that Plaintiff
8  could perform simple instructions was consistent with Plaintiff's
9  reported activities of daily living, including the ability to
10  care for her personal needs, drive her car, do the shopping,
11  visit with relatives (but not clean house or cook) (A.R. 250 [as
12  reported to Dr. Michiel]), talk to neighbors (A.R. 296), and cook
13  and warm food (A.R. 298). Plaintiff's activities of daily living
14  involved simple activities on a regular basis. Further, the
15  overall medical evidence and the most recent medical evidence
16  supported the ALJ's evaluation of the evidence.

17  　　Thus, the ALJ gave specific and legitimate reasons,
18  supported by substantial evidence in the record, for crediting
19  the report of Dr. Michiel over the reports of Dr. Raypon and Dr.
20  Kaleka.

21  　　Further, the ALJ gave reasons in addition to the purpose of
22  the opinion that supported his assessment of Plaintiff's mental
23  RFC. The ALJ also expressly noted that additional records
24  submitted from Dr. Kaleka reflected only conservative treatment
25  for depression/anxiety as well as Plaintiff's physical
26  impairments; further, the January 2004 mental capacities form
27  completed by a physician's assistant indicated that the Plaintiff
28  could not work or follow instructions, but it was not given

15

1  controlling weight because it was not supported by treatment
2  records. (A.R. 18.)

3      Reference to the record of treatment in January 2004 (A.R.
4  265-67) shows that Dr. Kaleka circled many of the same symptoms
5  regarding Plaintiff's psychological condition (insomnia,
6  depression, anxiety, guilt feeling, changes in mood, nightmares),
7  noted she was anxious or depressed, and diagnosed
8  depression/anxiety. (A.R. 267.) Medication continued to be the
9  only treatment for Plaintiff's mental impairment; thus, the
10  record supports the ALJ's reasoning that Plaintiff's treating
11  doctor continued to recommend only conservative treatment.

12      Further, the treatment records going back to October 2003
13  reflected only the circling of the same symptoms, which by virtue
14  of their nature were based substantially on Plaintiff's reports,
15  and which did not appear to demonstrate the claimed total loss of
16  function attributed to Plaintiff by the physician's assistant.
17  (A.R. 268-69.) Yet with respect to Plaintiff's mental impairment,
18  the physician's assistant opined that Plaintiff could not attend
19  class, work, or follow instructions; she did not adapt to stress,
20  and she had depression and anxiety. (A.R. 266.)

21      The treatment records are not supportive of total disability
22  because they do not reflect clinical findings that would justify
23  the extensive disability claimed. It is further unclear whether
24  any dysfunction is related to specific settings or contexts, and
25  whether or not it is affected by the medication which the
26  physician continued to use for treatment. In the main, the
27  opinion is stated in ultimate terms to the effect that Plaintiff
28  could not work or attend class. It is established, however, that

1  a determination of whether or not a claimant meets the statutory

2  definition of disability is a legal conclusion reserved to the

3  Commissioner; the opinion of a medical source on the ultimate

4  issue of disability is not conclusive. Magallanes v. Bowen, 881

5  F.2d 747, 751 (9th Cir. 1989).

6      The Court concludes that substantial evidence in the record

7  supports the ALJ's reasoning that the treatment records did not

8  support the physician's assistant's opinion of Plaintiff's

9  disability. This reasoning is specific and legitimate. It was not

10 disputed that Plaintiff suffered a mental impairment. The

11 critical inquiry was the extent to which Plaintiff's mental

12 impairment actually affected Plaintiff's functional capacity. The

13 ALJ's finding that the record from the treating sources was

14 inadequate to support the extent of limitation claimed by

15 Plaintiff and her physicians was directly pertinent to the

16 required analysis.

17     In summary, the Court rejects Plaintiff's contention that

18 the ALJ failed to give legally adequate or specific and

19 legitimate reasons for weighing the opinions of the various

20 psychiatric experts discussed above. Further, the Court finds

21 that substantial evidence supported the findings.

22            B. Dr. Forward and Trainee's Assessment

23     Plaintiff challenges the correctness of the ALJ's reasons

24 for rejecting a psychological evaluation completed by a trainee

25 and reviewed and signed by a licensed clinical psychologist, Dr.

26 Valerie Forward. Plaintiff argues that the ALJ erred in

27 concluding that the evaluation was done by a trainee. Further,

28 because the ALJ failed to note or decide that the assessment was

explanatory and consistent with Dr. Kaleka's opinion, the ALJ failed properly to evaluate the opinion.

The ALJ stated the following:

At the request of claimant's attorney, the claimant received a psychological evaluation from Alycia Barlow, psychological trainee, with Psychological Service Center, in January 2005. On mental status examination, the claimant was described as withdrawn and her affect appeared restricted and depressed. The claimant admitted to past and current thoughts of suicide, but she denied having receiving (sic) any mental health services. The claimant reported feeling anxious. The claimant reported having eleven children, with the tragic death of her youngest in 1991. The examiner opined that the claimant appeared to exhibit symptoms of unresolved grief when discussing her loss. She also reported auditory hallucinations that were likely the result of depression. At this time, the examiner considered the claimant's recent and remote memory to be moderately impaired. However, on testing, the claimant was able to correctly identify time on the clock and all denominations of money, and knew the purposes of money. She claimed that she does not use the telephone if no one is home, though she was able to demonstrate how to use it. The diagnosis was major depressive disorder, recurrent and severe, and post traumatic stress disorder, chronic. The examiner reported in summary that the claimant demonstrated mild deficits in her ability to interact, which were more likely due to cultural and psychological factors rather than a cognitive impairment. The examiner reported in closing that the claimant's lack of formal education, extreme psychological distress and limited acculturation reduce her ability to function at her full intellectual capacity and limit her ability to perform adaptive functions. Although the trainee recommended individual psychotherapy relative to the unresolved grief issue and also group therapy and psychiatric evaluation to evaluate the medications currently prescribed (Exhibit 8F, pages 1-7), there is no evidence that these treatment avenues have been pursued by the claimant.

(A.R. 19.) Later, the ALJ returned to the assessment:

While evidence also suggests that the claimant suffers from post traumatic stress disorder, associated with a prior traumatic loss of child, neither of the psychiatrists who evaluated the claimant for the Administration found evidence that this impairment resulted in any limitations in functioning and actually did not even diagnose it. The recent psychological assessment, obtained by the claimant's attorney, suggests that the claimant's limitations result from a combination of psychological distress, as well

18

a (sic) lack of formal education and limited
acculturation. However, I note that education and
acculturation are already factored into the Medical
Vocational Guidelines and are not a medical impairment.
Further, this examiner was trainee and under Social
Security Regulations is not considered an acceptable
medical source. Thus, her opinion, while considered,
is not given controlling weight.

(A.R. 20-21.)

The report of the evaluation reveals that it was requested
by Plaintiff's attorney's office; involved a structured clinical
interview, mental status examination, and psychological as well
as adaptive and social functioning tests; and was conducted with
one evaluator, Alycia Barlow, a psychological trainee, on January
19, 2005. (A.R. 270-79, 270-71.) No information is given
concerning the educational background of the trainee. The report
indicates that all assessment results were reviewed with a
licensed clinical psychologist, Dr. Valerie Forward, Ph.D. (A.R.
271.) Both trainee Barlow and Dr. Forward signed the assessment
on February 3, 2005 (two weeks after the examination). (A.R. 276,
279.)

The ALJ properly concluded that the trainee was not an
acceptable medical source under Social Security Regulations.
(A.R. 20-21.) Symptoms of the claimant alone cannot establish a
physical or mental impairment; rather, there must be evidence
from an acceptable medical source. 20 C.F.R. §§ 416.902, 416.908,
416.913(a). Acceptable medical sources for the purposes of this
case include licensed physicians and licensed or certified
psychologists. 20 C.F.R. § 416.913(a).

The ALJ appropriately concluded that the trainee was not an
acceptable medical source. Although an acceptable medical source

reviewed the assessment of the trainee, it does not appear that

the acceptable medical source herself conducted the interview or

tests or otherwise actually engaged in the face-to-face

evaluation of the claimant. Instead, it appears that an

unlicensed trainee was the actual sole examiner, and then at some

unspecified time after the trainee's evaluation, the acceptable

medical source reviewed the work of the trainee. The trainee does

not appear to have had any certification of any type; further,

there are no data regarding the trainee's education, the extent

of the relationship between the licensed clinical psychologist

and the trainee, or the former's supervision of the latter. Thus,

this case may be distinguished from <u>Gomez v. Chater</u>, 74 F.3d 967,

970-71 (9th Cir. 1996).

Further, the Court notes that the ALJ also properly relied

on the fact that the trainee's assessment was based not only upon

medical factors, but also upon Plaintiff's education and

acculturation. (A.R. 20.) The record shows that the trainee

relied on Plaintiff's lack of formal education and cultural

factors, concluding that Plaintiff's mild deficits in interacting

with her environment were most likely attributable to cultural

factors as well as psychological ones; the trainee also concluded

that Plaintiff's unconventional reasoning and perceptual

abilities might result from a lack of formal education and

cultural factors. (A.R. 273, 275.) The trainee concluded:

> In summary, her lack of formal education, extreme
> psychological distress and limited acculturation reduce
> her ability to function at her full intellectual capacity
> and limit her ability to perform adaptive functions
> she may otherwise be capable of.

(A.R. 275.) Reliance on strictly cultural and educational factors

1  would run afoul of the regulations, which provide that an

2  impairment must result from anatomical, physiological, or

3  psychological abnormalities which can be shown by medically

4  acceptable clinical and laboratory diagnostic techniques. 20

5  C.F.R. § 416.908. An impairment must be established by medical

6  evidence consisting of signs, symptoms, and laboratory findings.

7  Id. As Defendant notes, the Medical-Vocational Guidelines, or

8  "Grids," already include education and some cultural factors,

9  such as work experience, skills, and literacy. See, e.g., 20

10  C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a), (d); 201.00

11  (d), (e), (g).

12      V. Lack of Testimony of a Vocational Expert at Step Five

13      Plaintiff argues that because Plaintiff had two severe

14  mental impairments and had no past relevant work, vocational

15  testimony was required at step five of the disability analysis.

16  Plaintiff argues that the "Grids," or Medical Vocational

17  Guidelines, speak only to exertional factors; because Plaintiff

18  had a mental non-exertional impairment that limited him to simple

19  one-step and two-step tasks, the evidence was insufficient to

20  sustain the determination that Plaintiff could perform other

21  work.

22      The ALJ concluded that Plaintiff was not disabled by

23  application of Rule 202.16 because Plaintiff had the

24  nonexertional capacity to perform almost all the requirements of

25  light work. The ALJ concluded that the limitation to tasks of a

26  simple, repetitive nature did not significantly erode the

27  occupational base of work at the various levels of exertion

28  because the Commissioner had identified numerous unskilled jobs

1  which did not involve more than simple, one-step and two-step
2  tasks. (A.R. 22.) The ALJ concluded that Plaintiff's mental
3  limitations did not significantly erode the unskilled
4  occupational base of jobs. (Id.)

5       Plaintiff argues that the fact that jobs were unskilled was
6  not sufficient to accommodate Plaintiff's limitation to simple,
7  one-step and two-step tasks because many unskilled jobs have a
8  reasoning level that require more than the ability to understand,
9  remember, and carry out simple instructions. Plaintiff contends
10 that Plaintiff's limitation most reasonably equates to reasoning
11 level one of the DOT standards; in the DOT[4] many unskilled jobs
12 have a reasoning level beyond level one. Therefore, reference to
13 the grids is inappropriate.

14      Once a claimant proves he cannot return to his former work,
15 the Secretary must show that there are jobs in the national
16 economy that the claimant can perform. Jones v. Heckler, 760 F.2d
17 993, 998 (9th Cir.1985). The guidelines may only be applied when
18 they accurately reflect a claimant's limitations. Desrosiers v.
19 Secretary of Health & Human Services, 846 F.2d 573, 576-77 (9th
20 Cir. 1988). If a nonexertional limitation significantly limits
21 the range of work one can perform, mechanical application of the
22 grids is inappropriate, and a VE is required. Tackett v. Apfel,
23 180 F.3d 1194, 1102 (9th Cir. 1999). Absent other reliable
24 evidence of an applicant's ability to perform specific jobs, the
25 Secretary must use a vocational expert. Perminter v. Heckler, 765
26 F.2d 870, 872 (9th Cir.1985). However, where nonexertional

27
28      [4]All references to the DOT are to the Dictionary of
   Occupational Titles, fourth edition revised in 1991.

22

limitations are found not to significantly limit a claimant's exertional capacity, then use of the grids is appropriate. <u>Razey v. Heckler</u>, 785 F.2d 1426, 1430 (9th Cir. 1986), <u>as amended</u>, 794 F.2d 1348 (where substantial evidence supported the agency's conclusion that the claimant's generalized anxiety disorder did not prevent him from engaging in the work that he was physically able to do, use of the grids was appropriate); <u>Odle v. Heckler</u>, 707 F.2d 439, 440 (9th Cir.1983) (where substantial evidence supported the finding that the claimant's non-exertional impairments of deafness, dizziness, and drug dependence did not significantly limit his exertional capacities, use of the grids was appropriate, and no finding as to specific jobs was required).

The functional capacity to perform a full range of light work includes approximately 1600 separate sedentary and light unskilled occupations constituting jobs that can be performed after a short demonstration or within thirty days, and do not require special skills or experience. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(a). Each occupation represents numerous jobs in the national economy. Soc. Sec. Ruling 85-15.

The capacity to perform a full range of light work represents a substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competence for unskilled work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(b).

With respect to unskilled work, the basic

1   mental demands of competitive, remunerative, unskilled work

2   include the abilities on a sustained basis to understand, carry

3   out, and remember simple instructions; to respond appropriately

4   to supervision, coworkers, and usual work situations; and to deal

5   with changes in a routine work setting. Soc. Sec. Ruling 85-15 p.

6   4. A substantial loss of ability to meet any of these basic work-

7   related activities would severely limit the potential

8   occupational base. Id. Further, unskilled jobs ordinarily involve

9   dealing primarily with objects rather than data or people, and

10  they generally provide substantial vocational opportunity to a

11  person with a solely mental impairment who retains the capacity

12  to meet the intellectual and emotional demands of unskilled jobs

13  on a sustained basis. Id.

14       The ALJ's conclusion that Plaintiff's limitation to simple,

15  repetitive tasks did not significantly reduce Plaintiff's

16  capacity for a broad range of light work was supported by the

17  relevant expert opinions of Dr. Michiel and the state agency

18  physicians, which indicated that Plaintiff was not significantly

19  limited in any respect other than the limitation to simple,

20  repetitive tasks, which he could perform to the extent required

21  for employment. (Tr. 260-62.)

22       Further, with respect to the DOT alone, the DOT's inclusion

23  of some jobs that require reasoning up to level 2 in unskilled

24  work, as Defendant notes, is accompanied by a statement that

25  although a worker at reasoning level 2 must be able to follow

26  "detailed" instructions, it further states that the instructions

27  would be uninvolved, that is, not a high level of reasoning. DOT,

28  Appendix C, § III. There is no exact correspondence between the

1  regulations' categories, which with respect to the capacity to

2  understand, remember, and concentrate include only "short and

3  simple instructions," on the one hand, and "detailed" or

4  "complex" instructions on the other. 20 C.F.R. §

5  416.969a(c)(l)(iii); see, Meissl v.Barnhart, 403 F.Supp.2d 981,

6  985 (C.D.CA 2005) (noting the lack of exact correspondence

7  between the two systems of categorization, and further reviewing

8  authorities that reflected a view that an RFC for simple and

9  routine or repetitive work was more in line with reasoning level

10 2 than with level 1 in the DOT, which required only the slightest

11 bit of rote reasoning); Hackett v. Barnhart, 395 F.3d 1168, 1176

12 (10th Cir. 2005) (finding that a RFC of simple and routine work

13 tasks was more consistent with reasoning at level 2, requiring

14 application of commonsense understanding to carry out detailed

15 but uninvolved written or oral instructions and dealing with

16 problems involving a few concrete variables in or from

17 standardized situations); but see Lucy v. Chater, 113 F.3d 905,

18 909 (8th Cir. 1997) (rejecting the contention that a claimant

19 limited to following only simple instructions could engage in the

20 full range of sedentary work because many unskilled jobs in that

21 category require reasoning levels of two or higher).

22      Accordingly, in light of the provisions of the grid itself,

23 the Court concludes that the ALJ's reliance on the grids was

24 appropriate. There was no need to obtain testimony from a

25 vocational expert.

26      VI. Disposition

27      In conformity with the foregoing analysis, the Court

28 concludes that the ALJ's decision was supported by substantial

evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Tia Lee.

IT IS SO ORDERED.

Dated:    **December 18, 2007**                     **/s/ Sandra M. Snyder**
                                             UNITED STATES MAGISTRATE JUDGE